Sidney J. MASSICOT, Robert R. Lirette and James F. Donnelly, Appellants,

v.

**UNITED STATES** of America, Appellee.

**No. 16521.**

United States Court of Appeals
Fifth Circuit.

April 7, 1958.

Rehearing Denied May 8, 1958.

Richard Dowling, New Orleans, La., Guy Johnson, Racivitch, Johnson, Wegmann & Mouledoux, New Orleans, La., for appellants.

Jack C. Benjamin, Asst. U. S. Atty., M. Hepburn Many, U. S. Atty., New Orleans, La., for appellee.

Before BORAH, TUTTLE, and CAMERON, Circuit Judges.

BORAH, Circuit Judge.

Appellants, Sidney J. Massicot, Robert R. Lirette, and James F. Donnelly, were tried, convicted, and sentenced on three counts of a five-count indictment charging them with certain violations of the Federal Communications Act, 47 U.S. C.A. §§ 605 and 501,[1] in that they did willfully and knowingly and without authority of the sender intercept and cause and suffer to be intercepted certain telephone communications by and between deLesseps S. Morrison and other named persons, and did divulge and publish and cause and suffer to be divulged and published to one or more persons the existence, contents, substance, purport, effect and meaning of the said telephone communications.

These separate and consolidated appeals from the judgments of conviction raise eight specifications of error. However, before considering these assignments, a brief statement setting forth the uncontroverted facts which were established at the trial would appear in order as background for the discussion and determination of whether there was error in respect to any of the matters complained of.

On January 17, 1956, the date of the Louisiana Democratic primary election, deLesseps S. Morrison, a candidate for governor, was at his home in the City of New Orleans. That evening, following the closing of the polls, he spoke over his residence telephone to several persons in

1. 47 U.S.C.A. § 605 in pertinent part provides: " * * * no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person * * *."

47 U.S.C.A. § 501 provides: *"General penalty.* Any person who willfully and knowingly does or causes or suffers to be done any act, matter, or thing, in this chapter prohibited or declared to be unlawful * * * shall, upon conviction thereof, be punished for such offense, for which no penalty (other than a forfeiture) is provided in this chapter, by a fine of not more than $10,000 or by imprisonment for a term not exceeding one year, or both * * *."

the city, including his wife, David R. McGuire and Claude Kirkpatrick. One or two days thereafter, appellant Massicot, while in a New Orleans hotel suite then occupied by the successful gubernatorial candidate, Earl K. Long, played back in the presence of at least five persons a tape recording of the aforementioned telephone conversations.

On February 3, 1956, following an investigation by the city police and the telephone company, a wire-tap was found in the terminal box on the service pole in front of the Morrison residence. The tap consisted of a service wire leading into Apartment "G" of an apartment house which was directly across the street from the Morrison residence and it was so connected at the terminal box that calls transmitted or received on the Morrison telephone would be transmitted or received simultaneously on the wire serving the apartment, with the result that such conversations could be overheard by third persons by the use of a telephone or other listening device.

The evidence further shows that Massicot operated the United Detective Agency in the City of New Orleans, that Lirette was a full time employee of the agency, and that in April, 1955, Donnelly had been employed by the agency on a part-time basis. The identity of Massicot as the person who played back the tape recording was definitely established by the testimony of several of the witnesses there present. The owner of the apartment building identified Lirette as the man who, on January 14, 1956, under the name "Sirette" rented and thereafter occupied Apartment "G" for four consecutive nights. This witness further testified that during the period in question, she overheard a conversation between Lirette and another man in which one of them remarked that he was glad

the other had brought a recorder. As to Donnelly, the evidence shows that he was employed by the telephone company from March 14, 1949 to May 1, 1956, as an installer-repairman, but that he was absent from duty during the period January 10 through January 22, 1956. In a statement which he made to agents of the Federal Bureau of Investigation, which was admitted over objection, Donnelly stated that he knew where the Morrison home was as he had previously worked there when there had been trouble with the telephone system; that he knew that Morrison's telephone lines ran directly to a pole in front of his house on which there was a cable terminal; that he climbed this pole and attached the pair of wires leading from Apartment "G" onto the terminal pair serving the Morrison residence telephone; and that thereafter he went into the apartment, checked the wires, and found that the tap was working. Donnelly further stated that prior to the day the tap was installed he made a headset consisting of one earphone with small alligator clips and a condenser, and that the headset was in Apartment "G".

■■ This brings us to a consideration of appellants' specifications of error. Their principal contention, which is the subject matter of specifications Nos. 1 and 8,[2] is that the statute under which they were convicted is merely a rule of evidence and does not define a crime against the United States, and that in any event, as urged in their motion in arrest of judgment, Congress did not intend that the crime denounced by the statute should apply to intrastate communications. We find no merit in either of these assignments. In Rathbun v. United States, 355 U.S. 107, 111, 78 S.Ct. 161, 163, 2 L.Ed.2d 134, the Supreme Court had occasion to consider the sec-

2. Specification No. 1. "Denial of the motion to dismiss is an apparent and grave error for the statute under which appellants were convicted does not describe a crime against the United States, but merely defines a rule of Federal Procedure (evidence)."

Specification No. 8. "Refusal of the Trial Court to arrest judgment was error as Congress did not intend that the crime defined by Section 605 of the Communications Act of 1934 should apply to intrastate telephone communications."

ond clause of the statute under which appellants were convicted, and in language which is destructive of appellants' contention that the statute does not define a crime, the Court pertinently said: " * * * Section 605 is penal in nature, the first violation being punishable by a fine of not more than $10,000 or by imprisonment for a term not exceeding one year, or both." See 47 U.S.C.A. § 501. And it is clear from the authorities that this clause of Section 605 applies both to intrastate and to interstate communications. Benanti v. United States, 355 U.S. 96, 104, 78 S.Ct. 155, 2 L.Ed.2d 126; Weiss v. United States, 308 U.S. 321, 60 S.Ct. 269, 84 L.Ed. 298; United States v. Gris, 2 Cir., 247 F.2d 860. As to appellants' motion in arrest of judgment, we think the trial court was clearly right in holding that it was without jurisdiction to entertain this motion for the reason that the motion was not made "within 5 days after determination of guilt" and no further time for filing the motion had been fixed by the Court during the five-day period. Rule 34, Federal Rules of Criminal Procedure, 18 U.S.C.A.;[3] Drown v. United States, 9 Cir., 198 F.2d 999; Marion v. United States, 9 Cir., 171 F.2d 185, certiorari denied 337 U.S. 944, 69 S.Ct. 1500, 93 L.Ed. 1747.

■■■ Appellants' second and third specifications of error[4] relate to the admissibility of the unsigned statement which appellant Donnelly made to agents of the F. B. I. Counsel first contends that in order to discharge its burden of showing that Donnelly's statement was free and voluntary, it was the Government's obligation to explain the absence of Donnel-

ly's signature thereon and this it failed to do. It is further contended that the statement which was admitted in evidence over objection is not a correct account of what Donnelly told the agents, in that the original and concurrent memoranda made on the date of the conversation between Donnelly and the agents includes spontaneous utterances which were necessary to his defense and which, if included in the written statement, would have established his innocence. The exculpatory statements to which reference is made are that Donnelly "didn't know anything about the tap" on Morrison's telephone, and "didn't know of Sirette or Massicot putting the tap on Morrison." This argument is not at all persuasive. The record shows that Donnelly was questioned first on the afternoon of April 25, 1956, when he was met in a parking lot in the City of New Orleans by two special agents of the F. B. I. At the outset the agents told Donnelly of the nature of their mission and carefully explained to him that anything he said would have to be voluntary, that he was entitled to have an attorney present during the interview, and they advised him of the consequences of making false statements to an agency of the government. During the first ten or fifteen minutes of the interview Donnelly made the aforesaid exculpatory statements and denied knowledge of the wiretap installation. Then, on Donnelly's suggestion that they have a cup of coffee in order to give him time to "think it over", the three went to a nearby restaurant, and after talking baseball and other unrelated matters, Donnelly in-

---

3. Rule 34 of the Federal Rules of Criminal Procedure reads as follows: "The court shall arrest judgment if the indictment or information does not charge an offense or if the court was without jurisdiction of the offense charged. The motion in arrest of judgment shall be made within [five] 5 days after determination of guilt or within such further time as the court may fix during the [five] 5-day period."

4. Specification No. 2. "The Trial Court erred in admitting the statement of Don-

nelly because that statement is unsigned. The lack of signature imposed upon the prosecution an additional obligation of satisfactorily explaining the refusal of the accused to sign—which obligation has not been met by the prosecution."

Specification No. 3. "The Trial Court erred by admitting the statement of appellant Donnelly because it was taken, or attempted to be taken by an F.B.I. Special Agent after that agent had been informed by counsel for Donnelly that he did not want Donnelly to make a statement under any circumstances."

formed the agents that he was ready to talk about the case if they would return to the car. This they did, and it was then that Donnelly made the admissions which were included in the statement which was admitted in evidence. At the end of this initial interview, it was agreed that Donnelly would, on the following day, meet with the agents at their office in New Orleans. In accordance with this arrangement, on April 26th Donnelly appeared at the office of the F. B. I. alone, at which time and with his express consent the information he had given them on the previous day was reduced to the form of a written statement. Prior to the dictation of the statement, and upon being again fully advised as to his constitutional rights, Donnelly stated that he did not desire the presence of counsel. Whereupon, and in Donnelly's presence and with his participation, the statement was dictated by one of the agents from notes which he had made during the previous interview. The statement was immediately transcribed by an F. B. I. stenographer and was read by Donnelly who, while admitting that it was true, said he preferred not to sign it until he had an opportunity to show it to his attorney. He was then given a copy of the statement and it was agreed that after he consulted with his attorney he would communicate with the agents and advise them whether or not he would sign it. Two days later, on April 28th, one of the agents spoke with Donnelly over the telephone at which time he stated that although the statement was true, on the advice of counsel he did not wish to sign it. The record standing thus, we are in no doubt that the trial judge rightly concluded that the statement was freely and voluntarily made, that the Government had satisfactorily explained why the exculpatory statements were not included therein and why the statement was not signed, and that it was properly received in evidence.

■ Appellants' additional objection to the admissibility of the Donnelly statement is predicated upon the ground that it was supposedly taken by the F. B. I. agents *after* they had been informed by counsel that he did not wish his client, Donnelly, to make a statement under any circumstances. This contention, which raises a question of fact, is without support in the record. The evidence is all one way and to the effect that Donnelly did not secure the services of an attorney until *after* he was interviewed by the agents and *after* his statement had been transcribed.

Appellants, in specification No. 4,[5] also contend that the court erred in denying their motions for mistrial and for a new trial. These motions were based upon the alleged prejudice resulting from the publication during the progress of the trial of certain remarks made by Government counsel to a newspaper reporter. The uncontroverted evidence which bears on this issue shows that at the close of the Government's testimony, the Donnelly statement was received in evidence only after the court had acquiesced in the request of defense counsel that they be permitted to delete therefrom all references to Massicot and Lirette; and when this statement with these deletions was read to the jury, the Government rested its case. Thereupon, the defendants moved for judgment of acquittal, but because of the lateness of the hour, argument thereon was deferred until the following morning. When the court reconvened and after arguments were had, counsel for defendants moved for a mis-

5. Specification No. 4. "The government prosecutor committted reversible error during the course of this trial by public statements to the effect that the statement of Donnelly ' * * * definitely involved the other two defendants, Sidney J. Massicot, operator of the United Detective Agency, and Robert R. Lirette, an employee of the agency.' After the im- propitious comment of the prosecutor, which is alleged to have occurred on the second day of the three-day trial, the issue was raised by a motion for mistrial which was denied; and, again, raised by the supplement of additional evidence in a motion for a new trial. The denial of both motions is here alleged as a positive specification of error."

trial on the ground that the final edition of a local afternoon newspaper of the preceding day had printed a story in which the Assistant United States Attorney was quoted as stating that the Donnelly statement "definitely implicated all three defendants." Whereupon and after the jury was ordered to return to the courtroom, the trial judge instructed them as follows:

"At the close of the case on yesterday the Government introduced a statement which the witness testified was made by the defendant Donnelly. You were instructed, and you are instructed again, that this statement may be used as evidence only as to the defendant Donnelly, that it has no bearing whatever and cannot be considered as evidence in connection with the guilt or innocence of the other two defendants, Massicot or Lirette * * *."

Following this admonition, the court then inquired whether any member of the jury had read the newspaper story and, in particular, the comment or quotation attributed to the Assistant United States Attorney. And when in response to this inquiry the court was advised that only one juror had read "part of that article", and that this juror had not read the Government attorney's statement, the court overruled the motion for mistrial. Subsequently, the case was submitted to the jury under instructions which were detailed, clear, and complete. They were told that they should consider only the evidence adduced at the trial,[6] and again admonished that the Donnelly statement could not be considered by them in the determination of the guilt or innocence of the other two defendants on trial. Thereafter, and following the return of the jury verdict, the defendants moved for a new trial based on "newly discovered evidence" which consisted of the texts of radio and television reports which had been broadcast on the second and third days of the trial and which included the following: "Federal attorneys in the current wire-tapping trial in New Orleans say they have an alleged confession implicating all three defendants who are on trial for tapping the private home telephone of New Orleans Mayor deLesseps Morrison." A hearing was had and the individuals who had served on the jury were sworn by the court as witnesses, following which the court asked them three specific questions relating to the radio and television reports.[7] All twelve of the jurors answered that they had not heard the broadcasts. The court then inquired whether there was any further question that the defendants would like the court to ask the jury. Defense counsel did not avail themselves of this privilege, but requested that they be permitted to personally cross examine the jurors, which request was refused. We think this rul-

6. The court instructed the jury in part as follows: "You must take out of your mind anything that you may have heard or read elsewhere than in this court room. You must make certain that every conclusion that you come to results from evidence which you received here in the jury box from the witnesses on the witness stand and from the documents which have been admitted in evidence. Unless you feel that you can do that, unless you feel that you can take out of your mind other considerations which may have come to you from other places, you will be doing a great injustice to one side or the other in this case. You must make certain that every consideration which comes before you in the jury room has come to you from the evidence introduced in this case, from the witnesses or from the documents admitted in evidence."

7. The court asked and received a negative answer to each of the following questions:
"1. Is there any member of the jury who has discussed this case with any representative of the Government or representative of the defendants, or the defendants themselves, since you were discharged?
"2. Is there any juror who heard that 10:00 P.M. broadcast over WWL on January 29th, 1957?
"3. Is there any juror who heard any one of these television news broadcasts by Tiger Flowers on the morning of January 30th, 1957, and that was the third and last day of the trial?"

ing of the court was correct, but in any event, no showing has here been made that the defendants were prejudiced thereby. However, the main thrust of appellants' argument, and certainly the one stressed in brief, is that since the jury were never locked up and there was no instruction to them by the court that they should not read, or listen to, or view the news accounts of the trial, it is reasonable to conclude that in some form all of the jurors would notice public reports on the matter under their scrutiny and that the implications and prejudices created by the statement could not be cured by any means other than entering a mistrial or granting the motion for a new trial.

We do not at all agree. While we recognize that the Government attorney did overstep the bounds of proper conduct by inadvertently making a public statement concerning the Donnelly exhibit, what is important here is that the jurors swore that they did not read or know of the prosecutor's statement. Consequently, it cannot be said that the jury or any juror had been improperly influenced or in any way affected by the publication and broadcasts complained of, or that the purity of the trial was destroyed. The trial judge exercised scrupulous care and took appropriate action when the matter was called to his attention and was satisfied to proceed. His discretion does not appear to have been abused. Shushan v. United States, 5 Cir., 117 F.2d 110, 116, 133 A.L.R. 1040; United States v. Carruthers, 7 Cir., 152 F.2d 512; Reining v.

United States, 5 Cir., 167 F.2d 362, certiorari denied 335 U.S. 830, 69 S.Ct. 49, 93 L.Ed. 383.

■ Appellants further claim that the admission of Donnelly's statement in evidence was prejudicial to Lirette and Massicot in that the portion " 'I accepted part time employment with the United Detective Agency. * * *' is the one link that combines all three defendants in a conspiracy to violate the statute."[8] This argument which is raised here on appeal for the first time is not persuasive. When the Donnelly statement was being considered in chambers by the court and counsel, no objection then, or at any time during the trial, was made to the above-quoted reference to the United Detective Agency. Moreover, the record shows that prior to the introduction in evidence of this statement the Government had conclusively shown that Massicot was the owner or operator of the United Detective Agency, and that Donnelly was a part-time employee. Thus, the language objected to did not tend to establish any independent fact, but was merely corroborative of the other evidence.

■ Finally, appellants urge in specifications Nos. 5 and 7,[9] that the court should have granted their motion for judgment of acquittal for the reason that the record failed to establish that any one of the three defendants had performed both of the essential elements of the crime, i. e., the interception and divulgence of a communication; and that, for the same reason, it was error to

8. Specification No. 6. "The statement of appellant, Donnelly, prejudiced the interest of the appellants, Massicot and Lirette. The efforts of counsel to delete portions of this statement prejudicial to the other defendants were ineffective. So were the attempts of the Trial Judge to instruct the jury to disregard the statement insofar as it implicated the other two defendants. Therefore, the introduction of the Donnelly statement into the evidence in this case was prejudicial error."

9. Specification No. 5. "The refusal of the Trial Court to direct a verdict of

acquittal is prejudicial error as the record of the evidence adduced failed to establish that any one of the three appellants was responsible for both the interception and divulgence of the communication."

Specification No. 7. "The charge to the jury is erroneous, in that the indictment is predicated on the violation of the Communications Act, 47 U.S.C.[A.] § 605, and the jury was instructed that under the aider and abettor statute (18 U.S.C. § 2) 'It is not necessary that each defendant actively participate in each element of the offense.' "

charge the jury that under the general statute on principals it was not necessary that each defendant actively participate in each element of the offense.

The indictment tracks the language of the statute [10] and charges that the appellants and each of them "did intercept *and did cause and suffer to be intercepted* a telephonic communication * * * and did divulge and publish *and cause and suffer to be divulged and published* the existence, contents," etc. of the said intercepted telephone communication. In its general charge the trial judge quoted in full the general statute on principals, 18 U.S.C. § 2,[11] and with reference thereto instructed the jury, in part, as follows:

> "What this statute means is this, that to commit the offense charged in the indictment, it is not necessary that each defendant actively and physically participate in each element of the offense. It is sufficient if pursuant to a plan fully known to him, the accomplishment of which plan would violate Title 47, Section 501, which is a section of the law charged to have been violated in the statute [indictment] and * * * if a defendant wilfully and knowingly commits an act in furtherance of that plan, if that act aids and assists in the accomplishment of the plan, and the plan is actually accomplished, then the defendant so acting is guilty of the offense as a principal, in spite of the fact that he did not actively and physically participate in all phases of the crime."

We think that the court's charge, when considered as a whole, was adequate and proper. Appellants' contention that the law will not support their convictions unless one or more of them participated in every element of the offense finds no support in reason or the authorities.

Here, the Communications Act plainly intends to punish the interception and publication of telephone communications. If one person deliberately procures the interception of a communication through others and then divulges and publishes the communication so procured, that person is under the statute guilty. To hold that the Act is violated only when an accused *personally* intercepts *and* divulges the communication would compel us to ignore the plain language of the statute, as well as the express holding of the Supreme Court in United States v. Giles, 300 U.S. 41, 57 S.Ct. 340, 81 L.Ed. 493. In this case the evidence established without any doubt whatsoever that Massicot personally divulged and published the communications by playing back the recording in the hotel suite. While the evidence did not show that he himself physically intercepted the communications, it showed that he as operator of the United Detective Agency and as the employer of Lirette and Donnelly "caused or suffered" the interception of the communications in question. And Donnelly and Lirette knowingly and wilfully performed their parts in the completed plan. Consequently, Massicot was as fully responsible for the interception *and* the divulgence as if he had performed both acts himself. This being so, the jury were authorized to find that Lirette and Donnelly were principals in the crime as aiders or abetters by virtue of 18 U.S.C. § 2. See Russell v. United States, 5 Cir., 222 F.2d 197; McClanahan v. United States, 5 Cir., 230 F.2d 919; Winger v. United States, 9 Cir., 233 F.2d 440.

The judgments appealed from are, therefore,

Affirmed.

CAMERON, Circuit Judge.

I dissent.

10. 47 U.S.C.A. §§ 605, 501.
11. 18 U.S.C. § 2, reads as follows: "(a) Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principal.

"(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

On Petition for Rehearing.

PER CURIAM.

As neither of the judges who concurred in the judgment of the court in the above numbered and entitled cause is of opinion that the petition for rehearing should be granted, it is ordered that the said petition be, and the same is hereby, denied.

Denied.