## IN THE MATTER OF JOSEPH MATZNER CHARGED WITH CONTEMPT OF COURT.

Argued October 13, 1971—Decided November 22, 1971.

*Mr. Robert I. Ansell* argued the cause for appellant (*Messrs. Anschelewitz, Barr, Ansell & Bonello,* attorneys).

*Mr. John P. Goceljak,* Assistant Prosecutor, argued the cause for respondent (*Mr. Joseph D. J. Gourley,* Passaic County Prosecutor, attorney).

The opinion of the Court was delivered by

FRANCIS, J. On July 30, 1970 defendant Joseph Matzner was convicted of criminal contempt in the Superior Court, Law Division, Passaic County. A sentence of two days in the County jail and a fine of $500 was imposed. On its own motion this Court certified the ensuing appeal before it was argued in the Appellate Division.

Matzner is the publisher of Wayne Today, a newspaper published in the Township of Wayne and circulated in western Passaic County. His son Harold Matzner, and others, had been indicted for two separate murders and upon trial were acquitted. Thereafter, one Stephen Delaney, a private investigator for the defense, was ordered to show cause why he should not be adjudged in contempt for certain conduct he allegedly engaged in during the investigatory stage of the alleged criminal events. Over objection of Delaney's attorney, trial of the matter by jury was ordered and July 20, 1970 was fixed as the trial date.

On July 19, 1970 a long editorial appeared in Wayne Today saying "the entire charge against Mr. Delaney is incredibly stupid," that the "man who did most to uncover the truth and prevent the frame-up which emanated from

the prosecutor's office, Stephen Delaney, has himself been charged on trumped up allegations," and that "the shame of it is that Delaney cannot get a fair trial because he will be forced to go before a Passaic County jury." The editorial asserted also that "Stephen Delaney is innocent of the charge filed against him." It alleged further that a certain official of the prosecutor's office "wants Delaney's scalp because Look Magazine exposed him [the official] for being corrupt and dishonest." And it said that "[I]nside [Passaic County] that official's power is vast and his ability to influence a juror is a danger which no man can ever discount."

On July 20, the scheduled trial day of the Delaney contempt proceeding, the Law Division Judge, fearful that the editorial might improperly influence the jury panel, reversed the previous jury trial order and directed a hearing before the court alone. On the same day, the order in the proceeding now before us was issued commanding Matzner to show cause why he should not be adjudged in contempt for publishing the editorial described above. The issue on which Matzner was directed to show cause was stated in the order as:

> [W]hy he should not be adjudged guilty of contempt of this Court for publication of a newspaper editorial advocating the innocence of one charged with a criminal offense and having knowledge that the trial of the latter with a jury was scheduled to begin in the county of dissemination the day after publication.

Hearing thereon took place on July 30, 1970 at which time Matzner was adjudged in contempt.

At the hearing the prosecution put the editorial in evidence and rested. It took the position that no more was necessary to prove the contempt. It contended that since the Delaney jury trial was to begin the day following publication of the newspaper, and the language of the editorial contained therein was such as to create a clear and imminent danger of substantial prejudice to the fair administration of criminal justice in that trial, the criminal contumacy

was established. That contention appears to be the test for determining whether the newspaper publication involved here constituted a contempt of court. See *Wood v. Georgia,* 370 *U. S.* 375, 82 *S. Ct.* 1364, 8 *L. Ed.* 2d 569 (1962); *Craig v. Harney,* 331 *U. S.* 367, 67 *S. Ct.* 1249, 91 *L. Ed.* 1546 (1947); *Pennekamp v. Florida,* 328 *U. S.* 331, 66 S. Ct. 1029, 90 *L. Ed.* 1295 (1946); *Bridges v. California,* 314 *U. S.* 252, 62 *S. Ct.* 190, 86 *L. Ed.* 192 (1941); *In re Bozorth,* 38 *N. J. Super.* 184 (Ch. Div. 1955); *Baltimore Radio Show, Inc. v. State,* 193 *Md.* 300, 67 *A.* 2d 497 (1949), *cert. den.* 338 *U. S.* 912, 70 *S. Ct.* 252, 94 *L. Ed.* 562 (1950); *Goldfarb, The Contempt Power,* 93–100 (1963); Note, "Fair Trial, Free Press, The Contempt Power: Its Historic and Modern Application," 3 *Suffolk U. L. Rev.* 484 (1969). But we need not decide on this appeal whether application of the test would justify a finding of criminal contempt. That question can await another day.

Matzner, through his counsel, denied that he wrote the offending editorial, or saw or knew of it prior to publication. It was stated also that he was present in court and prepared to so testify. The actual authors were named and the court was informed that they were also in court and ready to testify to that effect; and counsel offered to have them added as defendants in the proceeding. However, the prosecution took the position that under a broad application of the *respondent superior* theory the newspaper entity, Wayne Today, and Matzner as its publisher were one and that if the challenged editorial were criminally contumacious, Matzner became *ipso facto,* subject to the same criminal liability as the paper. On the other hand, the defense contended that criminal responsibility could not be fastened on Matzner personally in the absence of a *mens rea, i. e.,* an intent on his part to publish or to authorize or to approve publication of the editorial prior to the printing and circulation of the paper.

The trial judge accepted the prosecution's view. During argument he said among other things:

I am not so sure that in this particular area \* \* \* vicarious *quasi* criminal liability is not valid. The area we are in is a wilderness which has been very little explored and yet there are signs in increasing number of the need to get deeper into it. But I think that it could very well be argued that since the ultimate problem in this competition between the concepts of free press and fair trial is as to the impact on the public, that it may be that it is only the impact that will be considered and that anyone who would be fairly connected with the entity or persons who generated the impact would be responsible.

If the defense of no actual knowledge is readily available, then there is very little that can be done to prevent the public impact, which after all creates the problem.

There could be as I say, some new concepts of vicarious liability in order to provide the only effectual deterrent.

At the close of the hearing, although accepting Matzner's word (without requiring him to testify on the subject) that he had no knowledge of the editorial, the trial judge pressed forward with his concept of vicarious liability. While acknowledging that it was essential for the prosecutor to establish responsibility for the words and that "there must be some rational connection between the words and a person who ought to be punished for them," he declared that the "connection is not limited to that between the words and their author." By way of illustration he suggested that "if A writes words and hands them to B and B decides to publish them, then it is fair to hold B responsible." The judge then continued:

Here it is said that A's words were published without Mr. Matzner's knowledge. I take his word for that, but the words have not been repudiated nor retracted. Is there then a connection by adoption? Would that concept be unfair in the framework of the newspaper business? I have to think about who dominates this newspaper. It is Mr. Matzner who does. It is styled as being one of the Matzner Publications. He is personalized in the mast head that appears in a space just below the end of the editorial. Is it unfair to hold him responsible for an opinion he has never turned his back on? It is the newspaper that is important in this picture. It has the power, when we speak of the press, we refer to what the product is which the public sees and considers and is moved by. It really is the

printed page. And in particular the editorial page that moves the World and normally what moves us is never personalized by us as readers into faces or people behind the front.

So that I think it fair and that is what due process boils down to, fairness, to hold that Mr. Matzner is the paper * * *.

On the basis outlined in the quoted oral pronouncements, Matzner was found guilty of criminal contempt and subjected to the fine and short jail sentence set forth above. Thus a conviction was founded on a record which affirmatively shows — by reason of the court's acceptance of Matzner's statement through his attorney — that he had no knowledge of the editorial prior to its publication. Such a result flies in the face of the due process requirement in criminal proceedings that the prosecution must carry the burden of establishing beyond a reasonable doubt all of the essential elements of the offense.

 In order for an employee, officer or owner of a newspaper to be convicted of a criminal contempt by reason of publication of an article or editorial therein, the proof must establish that he either wrote it, published or authorized its publication, or where his approval was a significant factor, approved its publication, with the intent of creating a clear and imminent danger of substantial prejudice to the fair trial of the case which is the subject of the publication. *In re Anderson,* 306 *F. Supp.* 712, 714 (D. D. C. 1969); *Worcester Telegram & Gazette, Inc. v. Commonwealth,* 354 *Mass.* 578, 238 *N. E.* 2d 861, 863–864 (1968); *People v. Post Standard Company,* 13 *N. Y.* 2d 185, 245 *N. Y. S.* 2d 377, 195 *N. E.* 2d 48, 50 (1963); *Ithaca Journal News v. City Court of Ithaca,* 58 *Misc.* 2d 73, 294 *N. Y. S.* 2d 558 (Sup. Ct. 1968); *In re Jameson,* 139 *Colo.* 171, 340 *P.* 2d 423, 428 (1959); *State v. American-News Co.,* 64 *S. D.* 385, 266 *N. W.* 827, 834–835 (1936); 17 *Am. Jur.* 2d *Contempt,* § 8, p. 14 (1964); Tauro, "Fair Trial — Free Press Revisited," 55 *A. B. A. J.* 417, 418 (May 1969); and see Standards Relating to Fair Trial and Free Press, American Bar Association Project on Minimum Stan-

dards for Criminal Justice (Approved Draft 1968) § 4.1 p. 14, Commentary, p. 152. Assuming, as the trial court did without sworn testimony, the truth of Matzner's statement that he did not have either actual knowledge of or personal connection with authorship or publication of the offending editorial, obviously he could not have had the evil intent or *mens rea* which is a condition precedent to guilt. The fact that Matzner was the publisher of the paper, without more, would not warrant imputation of the required criminal intent. Suppose, for example, he was out of the country at the time the editorial appeared, could it be said that without knowledge or authorization thereof, he could be adjudged guilty of criminal contempt simply because of his status as publisher of the paper? The situation might be different if a corporate newspaper entity were charged with criminal contempt where an officer or employee in the regular course of his duty wrote the editorial and had it published in the paper. *Cf. State v. Bee Pub. Co.*, 60 *Neb.* 282, 83 *N. W.* 204 (1900); Note, 3 *Suffolk U. L. Rev.*, *supra* at 508. However, no such problem is involved here.

■ Moreover, we cannot agree with the trial court's comment indicating that since Matzner had not repudiated or retracted the editorial, criminal responsibility therefor can be imposed on him. It must be remembered that the offensive publication took place the day before the Delaney trial was to be held. The record is barren of any proof that Matzner learned of the editorial before the paper was circulated to the public or in time to suspend its publication or withdraw it before the trial. So far as the proof shows, any contempt arising therefrom was complete before Matzner acquired knowledge of its publication. In our view, criminal liability cannot be predicated upon such an after-the-event failure to publicly repudiate or retract the editorial.

Since the record lacks proof that Matzner had the intent necessary to make publication of the editorial chargeable

against him as criminal contempt, the judgment of conviction cannot stand.

Reversed.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN—7.

*For affirmance*—None.