### GRIFFIN et al. v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. February 7, 1924.)

#### No. 3076.

1. **Criminal law ⬥⟶751—Duty of trial judge to withdraw juror, where facts other than evidence have reached jury.**

   It is the right of a defendant accused of crime to have nothing reach the mind of the jury concerning a case, except strictly legal evidence admitted according to law, and, if any facts prejudicial to him reach the jury otherwise, it is the duty of the trial judge to withdraw a juror and grant a new trial.

2. **District and prosecuting attorneys ⬥⟶1—United States attorney and assistants hold quasi judicial positions, and duty is to prosecute guilty and protect innocent.**

   The United States attorney and his assistants are officers of the court holding quasi judicial positions, and it is their duty, not only to prosecute the guilty, but also to protect the innocent.

<hr>

⬥⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Criminal law ⬡≈855(5)—Court erred in not withdrawing juror and granting new trial, where they read newspapers containing prejudicial statements.**

In prosecution for conspiracy to defraud the United States, the court erred in not withdrawing a juror and granting a new trial, where there fell into the hands of the jury newspapers stating that the prosecuting attorney said that five of the defendants had offered to make a clean breast of their part in the conspiracy and turn state's evidence, and that he held a written confession of three of the defendants, in addition to two who had pleaded guilty.

**4. Criminal law ⬡≈751—Direct evidence held to exist that jurors read newspaper reports.**

Where it is admitted that articles concerning the case appeared on the front page of newspapers, and there is no denial of statement made by counsel in motion for withdrawal of a juror that members of the jury were seen reading the newspapers, it cannot be urged that there was no direct evidence that the jury read the newspaper reports.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Charles L. McKeehan, Judge.

Matthew F. Griffin and others were convicted of conspiracy to defraud the United States, and bring error. Reversed, and new trial granted.

Henry M. Stevenson, John P. Connelly, James F. Boylan, Edward S. Kremp, John F. McEvoy, Harry P. Felger, and Benjamin M. Golder, all of Philadelphia, Pa., Charles J. Buchner, of Brooklyn, N. Y., and Todd Daniel, of Philadelphia, Pa., for plaintiffs in error.

George W. Coles, U. S. Atty., and Henry B. Friedman, Asst. U. S. Atty., both of Philadelphia, Pa.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Plaintiffs in error, defendants below, were indicted and tried on the charge of conspiring to defraud the United States. Some of them had secured from the government a permit to export intoxicating liquor from the United States to Greece. The method of effecting their conspiracy is alleged to have been to withdraw barrels of whisky from the New Hellam Distillery Company at Hellam, Pa., transport them to Philadelphia, place them in a warehouse in the custody of the delivery department of the United States Customs Bureau, and while there awaiting exportation remove the whisky from the barrels, substitute water therefor, export the barrels of water to Greece, secure clearance papers, report to the officials of the United States that the whisky had been landed in Greece in accordance with the permit, and dispose of the removed whisky for bootlegging purposes.

The case was tried to the court and jury. Smith pleaded guilty, and a verdict of not guilty as to Hamilton, Friedrich, and Kane was directed by the trial judge. The jury rendered a verdict of guilty against Griffin, Simon, McTamany, Levey, Kheiralla, Gottesfeld, and Levey, who have brought the case to this court on writ of error, contending that the trial judge erred in his refusal to charge as requested upon reputation for good character and credibility of witnesses, in the admission of testimony, and in refusing to withdraw a juror and grant

a new trial because of newspaper reports, published during the trial, of statements made by the Assistant United States Attorney who conducted the trial.

We have considered these alleged errors, but do not think that the action of the learned trial judge in any of them, except the last, was erroneous or requires discussion. On March 21, 1923, the third day of the trial, when the jury returned from recess at noon, counsel for the defense stated to the court that members of the jury had been seen reading newspapers, and that one of the jurors had a postscript edition of the Philadelphia Evening Ledger of that day, containing the following article on the front page:

"Prosecutor Asserts Five Defendants Wanted to Turn State's Evidence—
Refused.

"Five defendants in the plot have offered to turn state's evidence, according to Assistant District Attorney Friedman, who is prosecuting the case before Judge McKeehan. 'These men came to us before the trial opened Monday,' said Mr. Friedman to-day, 'and offered to make a clean breast of their part in the conspiracy, but our evidence against them was so overwhelming that we refused to make any deal.' The five Mr. Friedman said did not include Griffin."

Counsel thereupon moved for the withdrawal of a juror, which was refused, and an exception noted. The North American on the same day had contained the following item:

"Assistant U. S. District Attorney Friedman, prosecuting the case, held the written confession of three of the defendants, in addition to the two who have pleaded guilty. Dr. George I. Kheiralla, of New York, said to have been one of the most active of the conspirators, Samuel Gottesfeld, and Louis Levey have confessed to their part in the conspiracy. Harold L. Smith and Joe Kleiman pleaded guilty on Monday. In discussing the case yesterday, Mr. Friedman said he is still holding an ace in the hole for the prosecution, in the form of a written confession of three of the principals. He said he did not expect to find it necessary to use this evidence, but that he had it ready."

Similar statements were published in other newspapers in Philadelphia on other days during the progress of the trial.

[1] It is the right of a defendant accused of crime to have nothing reach the mind of the jury concerning the case except strictly legal evidence admitted according to law, and if facts prejudicial to him reach the jury otherwise, it is the duty of the trial judge to withdraw a juror and grant a new trial. United States v. Ogden (D. C.) 105 Fed. 371; Mattox v. United States, 146 U. S. 140, 150, 13 Sup. Ct. 50, 36 L. Ed. 917; McKibben v. Philadelphia & Reading Railway Co., 251 Fed. 577, 163 C. C. A. 571. In the last case just cited, a juror took a paper containing the account of a former trial of the case into the jury room and read it to the jury. In reversing the District Court for refusing a new trial, this court said:

"We are not disposed to analyze or seek to determine just what problematic effect this unwarranted matter had on the jurors' minds. * * * The noxious fact is that it had no place in the jury room."

[2, 3] The United States Attorney and his assistants are officers of the court, holding quasi judicial positions. It is their recognized duty,

not only to prosecute the guilty, but also to protect the innocent, and any statement made by them as to the guilt or innocence of a defendant on trial has considerable weight with the jury. The statement of the prosecuting attorney that five men came to him and offered to make a clean breast of their part in the conspiracy, that because the evidence was so overwhelming against them he refused to make any deal, that he held written confession of three of the defendants, in addition to the two who had pleaded guilty, that he was still holding an ace for the prosecution in the form of a written confession of three of the principals, and that he did not expect to use it, but had it ready, must have had great influence upon the jury. This statement was a confession of guilt by some who were at that very time solemnly protesting their innocence. In the face of this confession their testimony seemed a mockery in a court of justice. The jury was informed of this reported conversation through daily newspapers.

In reaching this conclusion, no criticism whatever is made or intended of the newspapers. It would be reasonably inferred that news given out by the United States Attorney's office during the trial might be properly published, and that there would be no impropriety in its being read by the jury. Newspapers generally are careful not to publish, during a trial exciting public interest, anything which might in any way interfere with a fair trial. It is the duty, however, of courts to see that litigation is conducted according to law, and not in the public press.

This case, because of the character of the objective crime, the method of executing it, and the standing of some of the defendants, was regarded by the government as an important one. The zeal of the young man in prosecuting those whom he believed to be guilty is commendable. He frankly and manfully assumed the responsibility for the statement, which was doubtless made without improper motives. Yet the proper administration of justice demands that those accused of crime have a fair trial, which was impossible after the jury had read reports of the damaging confession. Whatever chances of acquittal the defendants had at the beginning of the trial vanished at the publication of those reports.

[4] It is urged that there is no direct evidence that the jury read the newspaper reports. In the first place, it is admitted that the articles appeared on the front page of the newspapers, and there is no denial of the statement, made by counsel in his motion for the withdrawal of a juror, that "members of the jury have been seen reading them." Our opinion on this question was well expressed by Judge Acheson in the case of Meyer et al. v. Cadwalader (C. C.) 49 Fed. 32. The facts of that case were strikingly similar to those in the case at bar. He said:

"It is idle to say that there is no direct evidence to show that the jury read these articles. They appeared in the daily issues of leading journals, and were scattered broadcast over the community. The jury separated at the close of each session of the court, and it is incredible that, going out into the community, they did not see and read these newspaper publications. That these published statements were well calculated to prejudice the jury against the plaintiffs and deprive them of a fair trial is a proposition so plain that it would be a sheer waste of time to discuss it."

The defendants stoutly denied their guilt. It is not our duty or province to pass upon the merits of their defense, but it is our duty to see that it was presented to the jury free from bias or prejudice. Having reached the conclusion that it was not so presented, the judgment of the District Court is reversed, and a new trial granted.

BUFFINGTON, Circuit Judge, did not take part in the decision of this case.