WORCESTER TELEGRAM & GAZETTE, INC. & another *vs.*
COMMONWEALTH.

Suffolk.  Worcester.  May 6, 1968. — June 28, 1968.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & SPIEGEL, JJ.

*Contempt.   Newspaper.   Constitutional Law,* Freedom of speech and
press. *Practice, Criminal,* Fair trial, Mistrial.

Publication in a newspaper article, on the evening after the empanelling of
a jury for the trial of four defendants for a serious crime, of a statement
that three of the defendants "are free on bail" and that the fourth
defendant "is presently serving a sentence at . . . State Prison and
is in custody . . . at the trial" constituted a gross interference with
the defendants' right to a fair trial, and the judge properly declared a
mistrial at the opening of court on the following morning when some
of the jurors told him that they had read the article [580]; but the
statement did not present a "clear and present danger" to the ad-
ministration of justice, and, where it appeared that the publication was
without wilful design to affect the trial and against a policy of the
newspaper with respect to the publication of criminal records, convic-
tion of the newspaper and of a reporter for criminal contempt violated
their rights of freedom of the press and of speech guaranteed by the
First and Fourteenth Amendments of the Constitution of the United
States [582–583].

PETITION for writ of error filed in the Supreme Judicial
Court for the county of Suffolk on October 4, 1967.

The case was reserved and reported by *Cutter,* J., without
decision.

COMPLAINTS for contempt filed in the Superior Court on
June 2, 1967.

The complaints were heard by *Vallely,* J.

*Warren C. Lane, Jr.* (*Robert H. Golden* with him) for the
Worcester Telegram & Gazette, Inc.; *Gerald J. Helfenbein*
for E. Thomas McCabe, Jr., also with him.

*Willie J. Davis,* Assistant Attorney General (*Manuel
Morse,* Assistant District Attorney, *John M. Finn,* Deputy
Assistant Attorney General, & *Evan T. Lawson,* Legal
Assistant to the Attorney General, with him), for the Com-
monwealth.

*James C. Heigham & Alan D. Sisitsky,* for the Massachu-
setts Newspaper Information Service, amicus curiae, sub-
mitted a brief.

WILKINS, C.J.  Worcester Telegram & Gazette, Inc., the publisher of The Evening Gazette, a daily newspaper, and E. Thomas McCabe, Jr., a reporter, were convicted of criminal contempt in the Superior Court, Worcester County, and bring this petition for writ of error.  The case was reserved and reported without decision by the single justice upon the petition, the assignments of error, the return of the Superior Court, the answer of the Commonwealth, and a stipulation.  In the companion cases, which were the complaints for contempt, the defendants (petitioners here) allege exceptions.

The stipulation recites that there is uncertainty whether contempt proceedings can properly be brought here on exceptions; and, to save duplication in printing, includes an agreement that the facts and issues in the proceeding on writ of error are identical with those in the cases which are the subject of the bill of exceptions, where all facts necessary for review are to be found.  We shall consider the record as thus broadly presented, and shall decide the proceeding on writ of error, and dismiss the exceptions.

The complaints for contempt, filed on June 2, 1967, arose out of the publication on May 8, 1967, of a news article during a jury trial of four defendants on charges of armed robbery at the Shrewsbury Bank and Trust Company on December 16, 1965.  The article, among other things, stated: "Strazzulla, Spinale and Kazonis are free on bail.  Lombardi is presently serving a sentence at Walpole State Prison and is in custody of Walpole prison guards at the trial."[1]

The jury were empaneled on May 8.  The opening statement of the Commonwealth, instructions by the judge, and a view took the rest of the day.  The publication in the Gazette came that evening.

The following morning at the opening of court the defendants' counsel moved for a mistrial.  The assistant district attorney expressly agreed in the court room that the

---

[1] The last clause of the last sentence was in error.  The prisoner was in the custody of the regular deputy sheriffs assigned to the trial and not the Walpole prison guards.

publication had harmed the defendants. The judge inquired of the jurors how many had read the article. Apparently eight of the sixteen jurors then seated[1] answered in the affirmative. Without further inquiry the judge declared a mistrial.

On July 6 and 7 at the hearing of the complaints for contempt there was testimony by officers and reporters of the newspaper company, a court officer, and a guard at the Worcester County Jail. The judge found that the publication was without wilful design to affect the trial; that the publication was intentional in that it was intended to be published in the manner in which it was published; that there was an interference with the judicial process in that there was "imminent danger, real imminent danger to the administration of justice"; and that both defendants were guilty of contempt. The individual defendant was fined $100 and the corporate defendant was fined $1,000, payment to be suspended pending appellate review.

1. The publication constituted a gross interference with the defendants' right to a fair trial. To state that one defendant was serving a sentence at the Massachusetts Correctional Institution at Walpole and by necessary inference had been convicted of a serious crime was scattering information that could not be introduced in evidence unless that defendant should testify as a witness. The article strongly tended to reflect on his three codefendants. The judge was right in declaring a mistrial, and also in doing so at once without consuming further time and expense in an effort to achieve a just result in face of great odds created by the publication. In *Marshall* v. *United States*, 360 U. S. 310, 312, it was said: "The trial judge has a large discretion in ruling on the issue of prejudice resulting from the reading by jurors of news articles concerning the trial. *Holt* v. *United States*, 218 U. S. 245, 251. Generalizations beyond that statement

---

[1] See G. L. c. 234, § 26B, "In a civil case, or in a criminal case, including a capital case, to be tried with a jury in the superior court which in the opinion of the court is likely to be protracted, the court may so certify and may order impanelled a jury of not exceeding sixteen members . . . ."

are not profitable, because each case must turn on its special facts." See *Sheppard* v. *Maxwell*, 384 U. S. 333, 362. The judge's prompt action avoided the delay which was criticised in *Commonwealth* v. *Crehan*, 345 Mass. 609, and in his discretion he could find the prejudice brought about by the petitioners was too strong to be removed by inquiry of the jurors or by instructions. See *Krulewitch* v. *United States*, 336 U. S. 440, 453 (concurring opinion of Mr. Justice Jackson); *Burgett* v. *Texas*, 389 U. S. 109, 115; *United States* v. *Clarke*, 343 F. 2d 90, 92–94 (3d Cir.); *Odom* v. *United States*, 377 F. 2d 853, 859–860 (5th Cir.).

2. From the mere fact that a written publication has resulted in a mistrial soundly declared by the trial judge because of a proper solicitude for the rights of parties, it does not necessarily follow that the publishers of the article are automatically to be adjudged in contempt for its utterance. See *Leviton* v. *United States*, 343 U. S. 946, 947, memorandum of Mr. Justice Frankfurter on certiorari, where he quoted from the dissenting opinion of Judge Frank in the court below, 193 F. 2d 848, 866 (2d Cir.); "Courts, in reversing convictions for trial-by-newspaper, have always recognized that printed matter may be prejudicial enough to require a new trial without evidencing so depraved an attitude of the publisher as to support a contempt citation."

Whether these contempt convictions are "in violation of the First Amendment protecting the right of free speech or freedom of the press will be entirely dependent upon decisions of the Supreme Court of the United States." *Opinion of the Justices*, 349 Mass. 786, 791. "[I]n *Bridges* v. *California* . . . [314 U. S. 252, 260–264] . . . [that court] held that the compulsion of the First Amendment, made applicable to the States by the Fourteenth (*Schneider* v. *Irvington*, 308 U. S. 147; *Murdock* v. *Pennsylvania*, 319 U. S. 105, 108) forbade the punishment by contempt for comment on pending cases in absence of a showing that the utterances created 'a clear and present danger' to the administration of justice." *Craig* v. *Harney*, 331 U. S. 367, 372. The vagueness of the stated standard, which had its

origin in *Schenck* v. *United States*, 249 U. S. 47, 52, an opinion by Mr. Justice Holmes, has been the subject of frequent discussion. *Bridges* v. *California*, 314 U. S. 252, 260–263. *Pennekamp* v. *Florida*, 328 U. S. 331, 347–348. See *Opinion of the Justices*, 349 Mass. 786, 791–793, where there was discussion of the opinions of the Supreme Court of the United States with relation to the vagueness of the stated standard.

In a case dealing with comments as to matters pending before a judge, the Supreme Court of the United States has had recourse to "a working principle that the substantive evil must be extremely serious and the degree of imminence extremely high before utterances can be punished." *Bridges* v. *California*, 314 U. S. 252, 263. Where a grand jury is in-, volved, "in the absence of some . . . showing of a substan-  tive evil actually designed to impede the course of justice in justification of the exercise of the contempt power to silence the petitioner, his utterances are entitled to be protected." *Wood* v. *Georgia*, 370 U. S. 375, 389.

The Supreme Court has noted that "variant factors" could be present in a case such as the one below which involved a petit jury. *Wood* v. *Georgia, supra,* 389. The scope of permissible comment on pending proceedings is somewhat reduced in such a case, as the impact of an inadmissible, prejudicial statement will be more severe when it infects a petit jury than when directed against a trained judge (*Bridges* v. *California*, 314 U. S. 252; *Pennekamp* v. *Florida*, 328 U. S. 331, 348; *Craig* v. *Harney*, 331 U. S. 367, 376) or a grand jury conducting a general investigation. *Wood* v. *Georgia*, 370 U. S. 375, 392.

In the setting of the present cases the petitioners were found to have had no wilful design to affect the trial.[1] Also there was written evidence of a policy of the petitioner newspaper not to publish criminal records until accepted in the court records. We see no reason to doubt its accuracy, and

---

[1] See "Standards Relating to Fair Trial and Free Press," approved by House of Delegates, American Bar Association, February 19, 1968, Part IV, 4.1(a).

infer that the publication was the product of carelessness.
While the precise limits of "clear and present danger" can-
not be sharply defined, here it can be detected that the line
of what is permissible has been crossed by the conviction of
the petitioners.

> *Exceptions dismissed.*
> *Judgments of sentence reversed.*
> *Petitioners to be discharged and*
> *awarded judgment for costs against*
> *the Commonwealth to be paid by the*
> *county of Worcester.*