COMMONWEALTH *vs.* THOMAS STANLEY.

Franklin.   December 6, 1972. — February 14, 1973.

Present: TAURO, C.J., REARDON, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Identification. Practice, Criminal,* Newspaper article, Fair trial, Mistrial, Judicial discretion.

A victim's in-court identification of a defendant, which was unobjected to and was independent of a prior, legal identification, was properly admitted in evidence.  [104]

A defendant charged with assault and battery was not prejudiced by a newspaper article, announcing his conviction of the "brutal" crime in District Court, which was read by four jurors and brought into the jury room by a juror, where those jurors denied being influenced by the article and the judge gave curative instructions.  [104–105]  REARDON, J., dissenting.

COMPLAINT received and sworn to in the District Court of Franklin on January 8, 1969.

On appeal to the Superior Court the case was tried before *Campbell,* J.

*Joseph C. Delcore* for the defendant.

*John M. Callahan,* District Attorney, for the Commonwealth.

BRAUCHER, J.   The defendant was convicted by a jury of assault and battery upon a State police officer.   His exceptions bring to us two questions: (1) whether there was error in the admission in evidence of the officer's in-court identification of the defendant, (2) whether a mistrial was required because some of the jurors had read a newspaper article relating to the trial and one of them brought the newspaper containing the article into the jury room.

The officer had stopped a motorist for speeding. The officer looked into the car and was suddenly kicked in the groin, fell down, was kicked several more times, and was left lying in the road. The next day he picked the defendant's photograph from a group of seven or eight pictures. About six weeks later he went to a police barracks to identify the defendant, who was under arrest for an unrelated motor vehicle offence, and picked him out of a group of police officers, some of whom were dressed in plain clothes.

At the trial the officer on direct examination identified the defendant as the man who had kicked him. The defendant on cross-examination first brought up the confrontation in the police barracks, suggesting that the officer had been unable to make an identification. On redirect examination the officer testified that there was no question in his mind at the time of the confrontation as to his identification of the defendant. The judge then held a voir dire and ruled that the confrontation was improper, but allowed the evidence previously given to stand by virtue of waiver and a finding that the in-court identification had independent basis and origin.

On the second day of trial, the defendant brought to the court's attention a newspaper article about the case. The article stated that the defendant was appealing a District Court conviction of assault and battery on the officer, who was "brutally" beaten while on duty. It related that the case was originally defaulted when his attorney failed to appear and that when his attorney failed to appear a second time, the case was defaulted and the defendant given an extra year to his one and one-half year sentence. The article stated that another judge ordered the case tried, and that it was scheduled for May 9, but was postponed because the defendant's attorney was involved in a Boston murder trial.

The judge then asked each member of the jury whether he had read about the case in the newspapers and whether he had formed any opinion or prejudice as a result. Four of the jurors said they had read or seen the article, and

one had brought it into the jury room, but all of them
denied forming any opinion, bias or prejudice which
would preclude them from rendering a fair and impar-
tial verdict.   The judge then instructed the jury not to
read any publicity regarding the case, but denied the
defendant's motion for a mistrial.

1. The judge found that at the time of the in-court
identification the defendant and his counsel were well
aware of the confrontation and identification at the police
barracks.   He correctly ruled that by failing to move to
suppress or to request a voir dire or to object to the in-
court identification the defendant had waived any claim
that it was tainted by the earlier confrontation.   *Com-
monwealth* v. *Cooper*, 356 Mass. 74, 78–80.   His ruling
that the confrontation was improper under *United States*
v. *Wade*, 388 U. S. 218, was erroneous, since the defend-
ant had not then been formally charged with the crime.
*Kirby* v. *Illinois*, 406 U. S. 682.   *Commonwealth* v. *Lopes*,
362 Mass. 448, 451.   It is not argued that the confron-
tation was impermissibly suggestive in violation of the
standard of *Stovall* v. *Denno*, 388 U. S. 293.   Finally,
the judge made careful findings, supported by the evi-
dence, that the in-court identification had an independent
origin.   We do not substitute our judgment for that of
the trial judge in this situation.   *Commonwealth* v. *Mur-
phy*, 362 Mass. 542, 546–549, and cases cited.

2. "The parties were entitled to have the case decided
only upon the evidence that was introduced at the trial.
It was the duty of the judge to determine whether the
rights of the defendant were adversely affected by the
publication.   Much must be left to the discretion of the
trial judge, and his denial of the motion [for a mistrial]
implies a finding that the defendant had not been preju-
diced.   The action of the judge cannot be said to consti-
tute an abuse of sound judicial discretion. . . . More-
over, the judge . . . instructed the jury that if any of
them had read newspaper articles concerning the case he
should disregard what he had read.   The defendant's
counsel was apparently satisfied with the instruction and

asked for nothing further. . . . In any event, we must assume that the jury followed the instructions." *Commonwealth* v. *Barker*, 311 Mass. 82, 88. Compare *Commonwealth* v. *Crehan*, 345 Mass. 609, 613–615; *Commonwealth* v. *Eagan*, 357 Mass. 585, 588–589; *Commonwealth* v. *Beneficial Fin. Co.* 360 Mass. 188, 296–299.

The newspaper article in this case did not disclose the defendant's prior criminal record, as in the *Crehan* case, or an arrest while committing a crime other than that charged, as in the *Eagan* case, or involvement in a pattern of criminal activity, as in the *Beneficial* case. The characterization of the assault as brutal would be unlikely to affect jurors who had heard the victim's testimony. The reference to the District Court conviction, while unfortunate, was not necessarily fatal to a fair trial. Compare *Clapp* v. *Clapp*, 137 Mass. 183. It is often difficult if not impossible to conceal from a Superior Court jury the fact that there have been prior proceedings in the District Court. The defendant argues that the presence of the newspaper in the jury room required an automatic mistrial, but we do not think that its physical presence in the jury room added significantly to the likelihood of prejudice.

In these circumstances, we think a finding that the defendant had not been prejudiced was warranted, if, as in the *Beneficial* case, the judge gave "prompt, clear, and forceful instructions to the jury," which "were hardly susceptible of misunderstanding by the jury," and "were, in the circumstances, sufficiently *strong* to counteract the possible effect of the adverse publicity." The bill of exceptions does not include all the instructions given to the jury, and therefore raises no issue as to the adequacy of the instructions given.

3. We think it proper to add that the defendant improperly asserted in his brief that the judge "did not instruct the jurors to completely disregard that which they had already seen or read." In reply the Commonwealth attached an appendix to its brief, setting forth the curative instructions given. Counsel for the defend-

ant apologized for "this unintentional error," and moved to strike the offending portions of the defendant's brief, asserting that "counsel considered the sole issue to be whether the presence in the jury room of objects other than evidence was, in itself, grounds for a mistrial." There was no motion to strike the Commonwealth's appendix, and no challenge to the accuracy of its quotations from the transcript. Those quotations, though not part of the bill of exceptions, show the soundness of our rule that we will not consider the adequacy of instructions if they are not included in the bill of exceptions.

The judge promptly instructed the jury not to read any publicity regarding the case, that the article was not evidence, was erroneous in at least one particular, and should be disregarded. He renewed this instruction at the end of the day. The following day, before the jury were brought in, he made extensive findings with respect to possible prejudice and denied the defendant's motion for mistrial. His charge to the jury included the following: "As I indicated to you yesterday when the issue of newspaper publicity came up, you should totally disregard and put from your minds any information of that nature. It is not reliable, it is not part of the evidence of the case, and it shouldn't in any way, shape, or manner be considered by you in deciding the case."

*Exceptions overruled.*


REARDON, J., dissenting. The motion for mistrial should have been allowed on the ground that the defendant's right to an impartial trial under the Sixth Amendment to the Constitution of the United States was gravely imperilled by extrinsic material which found its way into the jury room.

Prior to treating with the issue in the case which impels this dissent, a word is in order on a procedural difficulty which has served to muddy the record and also the opinion disposing of the matter. It appears that on a two day trial ending on May 26, 1971, the defendant's

motion to take the case under G. L. c. 278, §§ 33A–33G, was allowed. Thereafter, on June 4, 1971, the "[o]rder making proceedings subject to . . . [G. L. c. 278, §§ 33A–33G, was] revoked for lack of statutory authority." Subsequently, in 1972, an amended bill of exceptions was filed and eventually allowed, and that is what is before us. See *Guerin* v. *Commonwealth,* 337 Mass. 264. We are thus limited in our review to what appears in the bill which states, as it should, that it "contains all of the evidence material to the exceptions alleged." *Commonwealth* v. *Boris,* 317 Mass. 309. *Commonwealth* v. *Klangos,* 326 Mass. 690. In view of the seriousness of what has occurred, there is reproduced in the margin that entire portion of the bill which brings into focus possible infringement of the defendant's Sixth Amendment rights.[1]

---

[1] "During the second day of trial, the defendant brought to the Court's attention a newspaper article relating to the trial which appeared in the Greenfield Recorder of May 25, 1971. This article stated that Thomas Stanley was appealing a district court conviction of assault and battery on State Trooper Stockwell who was *brutally* beaten while on duty in September 1968. It related that this case was originally defaulted when his attorney failed to appear and that when his attorney failed to appear a second time, the case was defaulted and the defendant given an extra year to his one and one-half year sentence. The article stated that the case was reviewed by Chief Justice Walter H. McLaughlin of the Superior Court and that Justice Ammi Cutter of the Supreme Judicial Court issued an order for judgment directing that the case be tried in Franklin County Superior Court in May. It further related that the case was originally scheduled for May 9, but postponed when Attorney Farese could not come to Greenfield because of his involvement in a Boston murder trial.

"The defendant moved for a mistrial because of this article. The Court then asked each member of the jury whether he had read anything about the case in the newspapers and whether, as a result of any such publicity, he had formed any opinion or prejudice which would preclude him from reaching a completely fair and impartial verdict. Four members of the jury stated that they had either read or had seen the article. One juror testified that he had scanned through it but couldn't tell exactly what it said, although he knew there was something in it about the case. Another juror admitted bringing the newspaper containing the article into the jury room and stated that he had read it. Another testified that he had read one and a half paragraphs. The fourth juror said that he had read the list of jurors. A fifth juror admitted that he had attempted to read the article, but that it was taken from the jury room by the sheriff before he had a chance to see it. The Court asked all four if they had formed or expressed any opinion, or had any bias or prejudice either for or against the defendant which would have precluded them from rendering a fair and impartial verdict and all four stated that they did not. The

In briefing the case the parties went well beyond the record. For his part, the defendant admittedly distorted it in his reading of the bill and his argument thereon. The Commonwealth proceeded to meet the distortion by seeking to employ S.J.C. Rule 1:22 (13), 351 Mass. 742, 744, to flesh out argument by means of an appendix to its brief setting forth extracts from the judge's instructions, findings on the motion for mistrial, and the charge to the jury.[2] A portion of this material, which is not before us on the record and which should have been struck, has found its way into the majority opinion where it has improper residence.

The prejudice which affected the defendant in this case lay in the reading by four jurors during an ongoing trial of a newspaper article making it evident that the defendant was appealing a District Court conviction of assault and battery on a State police officer "who was *brutally* beaten." [3] The offending article appeared in the jury room, and a fifth juror "admitted that he had attempted to read the article" but that it was taken by the sheriff from the room "before he had a chance to see it." That statement in the bill is indicative that the fifth juror had received information from some source which caused him to desire to peruse it. The majority opinion leans heavily on *Commonwealth* v. *Barker*, 311 Mass. 82. On its facts the *Barker* case is not apposite. In the *Barker* case "[t]here . . . [was] nothing to show that the article had been read by any juror or that anyone on

Court then instructed the jury not to read any publicity regarding the case. The defendant moved for a mistrial because of this article and because of the fact that it was found in the jury room. The Court took this motion under advisement and subsequently denied the motion. An exception was taken by the defendant and this exception was duly saved."

[2] Rule 1:22 concerns itself with outline bills of exceptions and plays no role here.

[3] Problems such as the one which arose in this trial have found their way into a number of reported decisions. *McHenry* v. *United States*, 276 Fed. 761 (D. C. Cir.). *Griffin* v. *United States*, 295 Fed. 437 (3d Cir.). *United States* v. *Carruthers*, 152 F. 2d 512 (7th Cir.). *Massicot* v. *United States*, 254 F. 2d 58 (5th Cir.). *People* v. *Gomez*, 41 Cal. 2d 150.

the panel had any knowledge of it." P. 87. *Commonwealth* v. *Eagan,* 357 Mass. 585, also cited, is distinguishable in that in the present case the newspaper was viewed by at least some of the jurors in the jury room and apparently was the subject of some discussion among them. It is, furthermore, arguable that the references to the defendant in the present case were more inherently prejudicial.

The better result was reached in *Marshall* v. *United States,* 360 U. S. 310, 312–313. In that case some of the jurors saw and read newspaper articles alleging that the defendant had two felony convictions and reciting other defamatory matters about him. The judge questioned each of the jurors. Each of the seven who had been exposed to the articles assured the judge that he felt no prejudice as a result of the articles. The Federal District Court denied the motion for mistrial, and the United States Supreme Court in reversing stated, "The prejudice to the defendant is almost certain to be as great when that evidence reaches the jury through news accounts as when it is a part of the prosecution's evidence. . . . It may indeed be greater for it is then not tempered by protective procedures."

The defendant, of course, is under no obligation to take the stand in his own defence. See *Commonwealth* v. *Festo,* 251 Mass. 275, 282. No emphasis is needed in description of the disadvantage which is his when his prior misadventures are referred to as they were here. He was confronted with a choice of suffering the damage or mounting the stand to explain it away. A point is made that what transpired "did not disclose the defendant's prior criminal record," if indeed he had one. But this attempted application of a technical test in the field of prejudice is not acceptable. Whether the conviction in the District Court constituted a "criminal record" as such is of no moment. What is important is whether jurors exposed to the article were prejudiced against him by that exposure.

This court has recently recognized that all seeds of

prejudice are not limited to a "criminal record." We have in our new Canons of Ethics and Disciplinary Rules Regulating the Practice of Law, Rule 3:22, 359 Mass. 796, enjoined counsel from making extrajudicial statements which relate to "[t]he character, reputation, or prior criminal record (including arrests, indictments, or other charges of crime) of the accused." DR 7–107 (B) (1). That injunction is based on recognition of the injury which the defendant may suffer through certain extra-judicial communications reaching the jury. Notable in the new canon is the refusal to limit such communications to technical "criminal records" alone. It is directed in part, in fact, to precisely the type of communication which occurred in this case.

Mr. Justice Holmes, as long ago as 1907, said, "The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print." *Patterson* v. *Colorado*, 205 U. S. 454, 462.

In recent years the nature of prejudice likely to affect a jury has been the subject of elaborate discussions between the press and the bar. The bar has contended that publication of an individual's record in any form tended to create pre-trial prejudice and, if it reached a jury during a trial, was destructive of a fair trial. This happens to be one facet of prejudice on which there is some agreement among students of the problem in the media. In fact, a study commissioned in 1968 by The American Newspaper Publishers Association Foundation noted: "[A]ll signs seem to point to the criminal record as a potent pretrial publicity element. This in itself is no finding. But its linkage to pretrial publicity is not complete. The implication as to whether jurors learn of the record through the press, or at the trial or through common knowledge has not been sorted out." Wilcox, The Press, the Jury, and the Behavioral Sciences, 52–53.

The bill of exceptions in the present case indicates that four jurors who had read the article stated on inquiry

Commonwealth *v.* Stanley.

that they would not be precluded from rendering a fair and impartial verdict. The fifth juror does not appear to have been subject to inquiry. "The Court then instructed the jury not to read any publicity regarding the case." Speaking first to the inquiry made of the jurors, the problem is whether jurors are the best judges of their own bias or lack of it. It has been stated that in so concluding the courts have in effect abandoned their own responsibility to insure impartial juries. Lofton, Justice and the Press, 329–330.[4]

It has been established that on inquiry jurors very frequently consciously or unconsciously do not express honestly their reaction to offensive material which they may have seen. See A. B. A. Standards Relating to Fair Trial and Free Press, 56-57 (Approved Draft, General Commentary, 1968).

The bill provides but meager information on the judge's cautionary instructions. The adequacy of cautionary instructions in this type of case is always questionable and, in fact, the likelihood of harm to the defendant may even increase with such instructions. Judge Jerome Frank once said of them, "[T]hat sort of warning tends to rub in the very fact the jury is cautioned to disregard. . . . It recalls the classic story of the young boy told to stand in the corner and 'not to think of a white elephant.'" Frank & Frank, Not Guilty, 113.

Furthermore, it is not without significance that cases in recent years in this field, *Irvin* v. *Dowd*, 366 U. S. 717, *Rideau* v. *Louisiana*, 373 U. S. 723, *Sheppard* v. *Maxwell*, 384 U. S. 333, have been departing from the view "that the discretion of the trial judge with regard to these questions is extremely broad and that actual prejudice, not simply the likelihood of harm, must be shown in order to obtain relief." A. B. A. Standards Relating to Fair Trial and Free Press, *supra*, 112. The *Sheppard* case

---

[4] Also, even the limited use of prior convictions to impeach has been criticised on the basis that juries will go beyond impeachment and employ the evidence otherwise against the defendant. There is much empirical evidence to support this conclusion. See Comments, 70 Yale L. J. 763, 777; 78 Harv. L. Rev. 426, 441.

emphasized that in cases possibly tainted by outside influence "appellate tribunals have the duty to make an independent evaluation of the circumstances." Pp. 362–363.

The defendant was accused of assault and battery. It may well have been that his victim was "brutally beaten," as the newspaper said and as one-third of the jury read, but he was entitled to a trial under the Sixth Amendment untainted by the introduction of such an article in the jury room. It taxes one's credulity to conclude that the article played no part in the deliberations and verdict of the jury. Under the Sixth Amendment, and on the basis of common sense without giving effect to that Amendment, there are serious questions attached to the verdict in the case. The defendant was entitled to a fair trial. He did not get it. A mistrial should have been declared.