COMMONWEALTH *vs.* PETER L. BARTOLONI.

Norfolk.    February 19, 1974. — April 9, 1974.

Present: ROSE, GOODMAN, & GRANT, JJ.

*Assault. Practice, Criminal,* Fair trial, Newspaper article, Judicial discretion.

Circumstantial evidence warranted a finding of guilty at the trial of an indictment charging that the defendant, a prisoner in a penal institution, being armed with a knife, assaulted another prisoner with intent to murder him. [153-154]

At the trial of an indictment against an inmate of a prison, no abuse of discretion appeared in denial of a motion for a mistrial based on a newspaper article, published on the morning of the second day of the trial and assumed by this court to have been seen and believed by the jury, which identified the defendant and the charge against him, related the circumstances of his being late to court the day before, and stated that the judge, who had been

assigned to preside at the trials of a large number of cases involving crimes committed at prisons, characterized the incident of the defendant's being late as one of many "frustrations" the judge had had in dealing with such cases and that by reason of those remaining to be tried he might keep the court in session through a scheduled vacation the following week.   [154-158]

INDICTMENT found and returned in the Superior Court on January 8, 1973.

The case was tried before *Spring, J.*

*Joseph F. Flynn* for the defendant.

*Robert B. Russell,* Assistant District Attorney, for the Commonwealth.

GRANT, J.   The defendant has been convicted under an indictment which alleges that on or about October 18, 1972, at Walpole, he, "being armed with a dangerous weapon, to wit, a knife, did assault Richard E. Hayes with intent to murder him."   The only exceptions which have been argued to us[1] are concerned with the trial judge's denial of the defendant's motions (1) for a directed verdict presented at the close of all the evidence and (2) to poll the jury with respect to and to declare a mistrial because of a certain newspaper article which was published on the morning of the second day of the trial.

1. We summarize the evidence most favorable to the Commonwealth.   On the day in question a correctional officer (the first officer) on duty in a cell block at the Massachusetts Correctional Institution at Walpole heard a scuffle on the third tier of the block, looked up at the tier, and saw the defendant (an inmate) pursuing one Richard Hayes (another inmate).   The officer sounded an alarm.   At about this time another inmate in a cell on the third tier saw the defendant run down the tier and wrestle Hayes to the floor.   The first officer, upon being

[1] We give no consideration to the numerous references in the defendant's bill of exceptions to various portions of the trial transcript, which is not before us, physically or otherwise.   See *Commonwealth v. Stanley,* 363 Mass. 102, 106-108 (1973) (dissenting opinion of Reardon, J.).

joined by several other officers, raced up the stairs to the third tier, where he observed the defendant crouched over Hayes, who was bleeding from what were later determined to be stab wounds in his neck and in the back of his left shoulder. A second officer who ran up the stairs with the first officer saw the defendant throw a knife off the third tier. The first officer heard a clang of metal on the bottom tier of the block in an area known as the "flats." A third officer testified that shortly after he entered the block a knife fell to the flats. He retrieved the knife, which, on subsequent testing, revealed the presence of human blood. After Hayes had been escorted downstairs from the third tier a fourth officer found a knife sheath at the top of the stairs.

The defendant's argument that such circumstantial evidence was insufficient to warrant a conviction under the indictment asks us to weigh certain testimony of the defendant which the jury were admittedly not required to believe, points to certain matters which would have been helpful to the Commonwealth but which were not covered by the testimony of the first officer, and stresses certain laboratory tests which showed that the only type of blood found on the defendant's clothing was his and not that of Hayes. We cannot accept the defendant's argument. For the same reasons as those which were very recently stated in *Commonwealth* v. *Lussier*, 364 Mass. 414, 420-422 (1973), we are of the opinion that the evidence was sufficient to warrant the jury in finding the defendant guilty as charged. Accordingly, the exception to the denial of the motion for a directed verdict is overruled.

2. The unsworn motion for a mistrial[2] alleged broadly that "(b) massive publicity, specifically based upon statements of . . . [the district attorney] regarding misconduct of inmates at Walpole in general has made a

[2] We quote only such portions of the motion as are referred to in the defendant's brief.

Walpole inmate unable to get a fair trial; (c) the presiding Justice has discussed the disorder at Walpole with the press, and the defendant herein was specifically named and associated with these disorders and illegal activity; (d) Walpole MCI disorders have been front page news and television and radio lead story, on all channels and stations, before and during this trial . . .." The motion concluded with requests that the jury "be individually polled[3] as to what they have heard and its effect upon their deliberations; be instructed not to read the papers and see media; and be discharged rather than sequestered."

The motion was presented and denied at the opening of the second day of the trial, which was March 23, 1973, a Friday. The only matter put forward by the defendant in an effort to sustain his burden of proving the allegations of his motion (see *Commonwealth* v. *Barker,* 311 Mass. 82, 87-88 [1942]; *Commonwealth* v. *Beneficial Fin. Co.* 360 Mass. 188, 294-296 [1971]) was a newspaper article which, we are told, appeared in an edition of the Boston Record American published on the morning the motion was filed and which is set out in the margin of this opinion.[4] The article was not attached to

---

[3] As to which, see *Commonwealth* v. *Eagan,* 357 Mass. 585, 589 (1970).

[4] The headlines of the article were "*Confusion in Walpole Case*" and "COURT IN SESSION — No DEFENDANT." The body of the article was as follows:

"A Walpole prison inmate was late for his court trial yesterday on charges of assault with intent to murder because, according to the district attorney's office, other inmates had the keys to his cell and wouldn't let him out.

"Peter Bartoloni, charged in connection with an attack on fellow inmate Richard Hayes last Oct. 18, finally showed up in the courtroom, but only after a series of events more similar to slapstick comedy than penal procedures.

"According to Judge . . . who was brought to Norfolk County Superior Court March 5 to hear a series of cases involving crimes

the motion or marked as an exhibit; however, as the article appears in the bill of exceptions allowed by the trial judge (see G. L. c. 278, § 31, as amended through St. 1953, c. 384), we shall assume that it was offered to the judge at the time of the hearing on the motion. Because the judge denied the request to poll the jurors with respect to the article, we shall also assume that the jurors saw the article (see *Commonwealth* v. *Crehan*, 345 Mass. 609, 613 [1963]) and believed the statements contained therein to be true, including those attributed to the trial judge[5] (see *Silverthorne* v. *United States*, 400 F. 2d 627, 643 [9th Cir. 1968]).[6]

---

committed at Norfolk and Walpole prisons, here is what happened:

"The office of Norfolk County Dist. Atty. . . . and the Correction Dept. said Bartoloni was late because there was a mixup on keys to cellblock 10 at the prison where Bartoloni was being held.

"The district attorney's office told the judge Bartoloni was a prisoner in his cell, kept locked up by other inmates.

"Walter Anderson, who said he was an assistant to Walpole Supt. Kenneth Bishop, who was not in the prison, told Judge . . . in a telephone conversation that the prisoner was not in court because an officer had taken the cellblock keys back to Bridgewater.

"Judge . . . asked if only one set of keys could be found to the cellblock and, according to the judge, Anderson replied no, that the inmate was being prepared and would be in court within a half hour.

"Judge . . . left his lobby and walked to the court room and found Bartoloni sitting there.

"The incident, the judge said, was just one more in a long line of frustrations he has had in trying to deal with some 90 cases involving crimes in the two prisons.

"He still has 58 to 60 cases to hear and plans to keep the court in session through a scheduled spring vacation next week."

[5] As the charge to the jury on the following Monday has not been included in the bill of exceptions, we do not know but what the instructions given by the judge may have completely dispelled whatever effect the article may have had on the minds of the jurors. See *Commonwealth* v. *Crehan*, 345 Mass. 609, 613-615 (1963); *Commonwealth* v. *Stanley*, 363 Mass. 102, 105 (1973); *Calo* v. *United States*, 338 F. 2d 793, 795 (1st Cir. 1964).

[6] Our indulging in these various assumptions does not require us to decide (a) whether the prosecution violated Disciplinary Rule 7-107 of

The principles by which we must be guided in determining whether the defendant was prejudiced, even in the absence of special instructions by the judge to disregard the article, have been stated often. "[A motion] for a mistrial, on the basis of [a] publication alone . . . [is] addressed to the judge's discretion." *Commonwealth* v. *Beneficial Fin. Co.* 360 Mass. 188, 297 (1971). See also *Worcester Tel. & Gazette, Inc.* v. *Commonwealth,* 354 Mass. 578, 580-581 (1968). "Much must be left to the discretion of the trial judge, and his denial of the motion implies a finding that the defendant had not been prejudiced." *Commonwealth* v. *Barker,* 311 Mass. 82, 88 (1942). *Commonwealth* v. *Stanley,* 363 Mass. 102, 104 (1973). "Whether a judge has abused his discretionary powers is to be determined by the special facts of each case." *Commonwealth* v. *Eagan,* 357 Mass. 585, 588 (1970). *Commonwealth* v. *Beneficial Fin. Co.* 360 Mass. 188, 299 (1971).

The article in this particular case (n. 5) attributes no misconduct to the defendant himself, as opposed to that of other inmates. Nor does it identify the nature of the offense which resulted in the defendant's being incarcerated at Walpole or suggest any involvement by him in a pattern of criminal conduct. Compare *Commonwealth* v. *Beneficial Fin. Co.* 360 Mass. 188, 296-297, 298-299 (1971); *Commonwealth* v. *Stanley,* 363 Mass. 102, 105 (1973). By the time the jury (or any of them) could have read the article they had presumably heard the reading of the indictment, they had learned that the defendant was an inmate at Walpole, and they had heard testimony as to the salient features of the assault on Hayes. Com-

---

the American Bar Association Code of Professional Responsibility and Canons of Judicial Ethics (1970), which, by virtue of S.J.C. Rule 3:22, took effect (with certain exceptions) on October 2, 1972, 359 Mass. 796-797, 822 et seq., or (b) whether the trial judge violated Canon 3(A)(6) of the Code of Judicial Conduct, which, by virtue of S.J.C. Rule 3:25, took effect on January 1, 1973, 359 Mass. 841, 843, 854.

pare *Commonwealth* v. *Balakin,* 356 Mass. 547, 554 (1969); *Commonwealth* v. *Stanley,* 363 Mass. 102, 105 (1973). The remarks attributed to the trial judge contained no expression of belief on his part as to the guilt or innocence of the defendant (contrast *People* v. *McKay,* 37 Cal. 2d 792, 794-796, 799 [1951]) or the merits of any defense raised by him (contrast *Fouquette* v. *Bernard,* 198 F. 2d 96, 99-100 [9th Cir. 1952]). The jury, which (as the defendant's counsel urged at oral argument) were by then serving in the third week of a regular sitting of the Superior Court at Dedham held for the transaction of criminal business (see G. L. c. 212, §§ 14, 14A and 20; G. L. c. 213, § 6), could not have failed to realize that the case on trial was one of "a series of cases involving crimes committed at Norfolk and Walpole." We see nothing in either of the last two paragraphs of the article which is susceptible of an interpretation that the judge felt frustrated by, or that the jury would be held for an additional week because of, anything done by this particular defendant.

Based on our own independent evaluation of the circumstances (*Sheppard* v. *Maxwell,* 384 U. S. 333, 362 [1966]), we concur in the finding of the trial judge, implicit in his denial of the motion for a mistrial, that the defendant was not prejudiced by the article; we perceive no abuse of discretion in the denial.

*Exceptions overruled.*