COMMONWEALTH *vs.* LOUIS B. SWENOR.

Hampden.    February 19, 1974. — February 19, 1975.

Present: HALE, C.J., ROSE, KEVILLE, GOODMAN, GRANT, & ARMSTRONG, JJ.

*Practice, Criminal,* Access to witnesses, Fair trial, Mistrial, Exceptions: failure to save exception.  *Evidence,* Admissions and confessions.  *Constitutional Law,* Admissions and confessions.

A judge did not abuse his discretion by refusing to delay a criminal trial until the presence of a potential defense witness, who was in Federal custody, could be obtained where the prosecutor's efforts to secure the presence of the witness were unsuccessful and there was no showing when the witness might become available. [66-68]

At a criminal trial there was no error in admitting in evidence statements volunteered by the defendant during a ride in a police car without any questioning by the police, even though he had not been warned pursuant to *Miranda* v. *Arizona,* 384 U.S. 436 (1966), before making the statements. [68]

At the trial of indictments charging the defendant with escape from jail and with helping fellow prisoners to escape there was no substantial risk of a miscarriage of justice in the denial of a motion for a mistrial based on a newspaper article relating that the defendant had escaped from jail in another State and that he had been charged with armed bank robbery, where of the three jurors who indicated some form of exposure to the article in response to a question from the judge, one was found to be impartial after an unrecorded bench conference, a second responded in the affirmative when asked if he could be impartial in this case, and the third stated that he was aware of the article but hadn't read it. [68-71] GOODMAN, J., dissenting in part.

SIX INDICTMENTS found and returned in the Superior Court on November 13, 1972.

The cases were tried before *Linscott,* J.

The cases were submitted on briefs.

*Thomas J. O'Connor* for the defendant.

*Matthew J. Ryan, Jr.,* District Attorney, *& Leonard E. Gibbons,* Assistant District Attorney, for the Commonwealth.

GOODMAN, J. The defendant appeals, under G. L. c. 278, §§ 33A-33G, from his convictions on six indictments, one charging him with escape from the Hampden County Jail, and the others each charging him with aiding and assisting a different fellow prisoner to escape. The defendant's only contentions relate to (1) the trial judge's refusal to delay the trial in order to obtain the presence of a witness who was in Federal custody, (2) his refusal to exclude testimony concerning statements made to police by the defendant, allegedly before he was given warnings pursuant to *Miranda* v. *Arizona,* 384 U. S. 436 (1966), and (3) his refusal to declare a mistrial on account of prejudicial publicity.[1]

1. The defendant was arraigned on March 1, 1973, and by March 19 had retained counsel.[2] Approximately a week before the trial, which began on April 23, 1973, the defendant made known to the court his desire that one Robinson and one Capuano, both of whom he was charged with aiding to escape, be present at the trial. The Commonwealth then started proceedings to secure their presence as possible witnesses. On April 23 Robinson was present in court, but Capuano was not.

Before moving for trial, the prosecuting attorney explained to the trial judge that the United States marshals, who had custody of Capuano, had advised the Commonwealth that they could not "at this time honor our habeas" to have Capuano present. The defendant then indicated that he did "not want to proceed with the trial of these . . . indictments, until Mr. Capuano's presence is assured in

---

[1] The failure to direct verdicts on the charges of aiding in the escape of the other prisoners was also assigned as error but has not been argued here apart from the other contentions.

[2] An attorney had been appointed on March 1 for the arraignment only.

court." The trial judge, however, ordered that the trial proceed. The prosecuting attorney suggested that, after the opening, the trial be recessed until the following morning, indicating he would meanwhile make a further attempt to have Capuano produced, and this suggestion was followed. There is no further reference in the transcript to this matter.

It thus appears that the prosecuting attorney attempted to have Capuano in court for the trial, and there is no indication by the defendant of dissatisfaction with the Commonwealth's efforts on that score. Cf. *Commonwealth* v. *McGrath*, 348 Mass. 748, 752-753 (1965). Capuano was not under the Commonwealth's control but in Federal custody, and it was within the discretion of the Federal authorities whether to honor a writ of habeas corpus issued by a State court and make him available. *Special Prosecutor of N. Y.* v. *United States Attorney for So. Dist. of N. Y.* 375 F. Supp. 797, 802-804 (S. D. N. Y. 1974). See *Commonwealth* v. *McGrath, supra,* at 750-751, citing *Ponzi* v. *Fessenden,* 258 U. S. 254, 265-266 (1922); *Ableman* v. *Booth,* 21 How. 506, 515-516 (1858); *Barber* v. *Page,* 390 U. S. 719, 723-724 (1968). Nor does it appear that the Commonwealth could do any more than the defendant himself could have done; he apparently made no attempt of his own to have Capuano produced. See *Curran* v. *United States,* 332 F. Supp. 259, 261 (D. Del. 1971); *Commonwealth* v. *French,* 357 Mass. 356, 399, par. A-6 (1970), judgments vacated as to death penalty sub nom. *Limone* v. *Massachusetts,* 408 U. S. 936 (1972). Under the circumstances, without any showing when Capuano might become available, it was not an abuse of discretion for the trial judge to refuse to postpone the trial.[3] See Rule 34 of the Superior Court (1954); *Commonwealth* v. *Lee,* 324 Mass. 714, 716-717 (1949); *Commonwealth* v. *Dirring,* 354 Mass. 523, 530 (1968); *Reiss* v.

---

[3] We note that the defendant never called to the stand Robinson, the other witness whose presence he had requested and who was at the trial and, like Capuano, was one of the men the defendant was accused of aiding to escape.

*United States,* 324 F. 2d 680, 682 (1st Cir. 1963), cert. den. sub nom. *Jacobs* v. *United States,* 376 U. S. 911 (1964).

2. The record does not bear out the defendant's contention that the testimony of a police officer to statements made by the defendant were inadmissible because the defendant was not warned pursuant to *Miranda* v. *Arizona,* 384 U. S. 436 (1966). The argument is beside the point; from the voir dire held during the trial and the findings made by the trial judge it appears that the statements were made while the defendant was being taken in a police automobile from Malone, New York, where he had been turned over to the Springfield police. During the ride, in the course of a general conversation, the "defendant [as the trial judge found] volunteered to tell detective Bryans something he thought was 'funny', something he referred to as a 'joke' as to how he got out of York Street jail in Springfield. The police did not try to stop defendant from telling his story . . .."

There was not the slightest evidence at the voir dire, either from the police witness or the defendant (who also testified) that the defendant had been questioned in any way. The rule of the *Miranda* case is, therefore, inapplicable. *Miranda* v. *Arizona,* 384 U. S. at 478. *Commonwealth* v. *Glavin,* 354 Mass. 69, 72-73 (1968). *Commonwealth* v. *Frongillo,* 359 Mass. 132, 135-136 (1971).

3. On the second day of the trial, counsel for the defendant filed a motion for a mistrial on the ground that an article which had appeared in that morning's edition of a newspaper published in Springfield (where the trial was being held) contained information detrimental to the defendant's right to a fair and impartial trial by jury. The article asserted that "[t]he Federal Bureau of Investigation reported capturing Swenor in Florida last December. Authorities at the Hillsborough County Jail in Tampa, Fla., reported that Swenor escaped from there Jan. 27. New York state police reported arresting Swenor in upper New York State Feb. 23."[4] It also asserted that "[a]t the time

---

[4] The jury necessarily learned of the defendant's arrest in New York at a later point in the trial. See part 2 of this opinion.

Swenor is said to have escaped from the county jail, he was awaiting trial for four armed holdups of Springfield banks."[5] The judge said to the jury: "Now, I want to ask you, first of all, have any of you read the article? If not, I ask you not to read it. If you haven't read it, I ask you not to read it."[6] In response to the judge's question a total of three jurors indicated some form of exposure to the article.

Five of the six Justices[7] to whom this case was submitted and referred under Rules 1:17 and 1:18 of this court (1972), 1 Mass. App. Ct. 892, are of the opinion (on the authority of such cases as *Commonwealth* v. *Eagan,* 357 Mass. 585, 588-589 [1970], and *Commonwealth* v. *Stanley,* 363 Mass. 102, 103, 104-105 [1973]) that nothing in the article required the judge to grant the motion for a mistrial and that whether there was error in the denial of the motion turns on the responses made by the jurors to the ensuing questions put to them by the judge.[8]

The first juror said that he had read the article. Following a conference with that juror at the bench, which was not taken by the stenographer, the judge (subject to the

[5] There is nothing to indicate that the newspaper obtained this information from the district attorney's office or from the police. See *Commonwealth* v. *Bartoloni,* 2 Mass. App. Ct. 152, 155-156, fn. 4 (1974).

[6] He went on to say: "We spent a lot of time, as you can see, trying to get impartial jurors and what the Supreme Court of the United States refers to as a neutral jury, and a neutral jury comes here and hears whatever is going to develop right here and decides from what they hear here, and in this article which I have read myself, and having been brought to my attention, concerns and mentions things which wouldn't be involved in this case and would be really prejudicial to the interests of the defendant, so I advise you and inform you and request you not to read the article."

[7] The differing views of the writer of this opinion are set out in the addendum hereto.

[8] As it is known exactly how many jurors were exposed to the article, there is no occasion for indulging in an assumption that the rest of them had read it. Contrast *Commonwealth* v. *Crehan,* 345 Mass. 609, 613 (1963); *Commonwealth* v. *Bartoloni,* 2 Mass. App. Ct. 152, 156 (1974).

defendant's exception) declared the juror impartial.[9] As there is no means of knowing what transpired at the bench, there is nothing which casts doubt on the judge's determination that the first juror would reach an impartial decision.

It appears from the record that the foregoing determination was immediately followed by another bench conference, likewise not taken by the stenographer, at the conclusion of which the judge, subject to the defendant's exceptions, stated that he was denying the motion for a mistrial. The judge then directed his attention to the other two jurors who had responded to his original inquiry. The second juror said, "I looked at it, but I didn't really — I didn't go fully into it" and replied in the affirmative to the judge's question, "Do you feel you can be impartial in this case?" The third juror said, "It was called to my attention, but I didn't have time to read it"; the judge did not ask that juror any question. The trial was thereupon resumed without any further objection made or any exception taken by the defendant to the judge's implied rulings that the second and third jurors were impartial.

The aforementioned five Justices believe that the record suggests a situation in which counsel may have made a deliberate decision that it was in the best interests of his client to proceed without calling the article to the further attention of the jury and have concluded that no "substantial risk of a miscarriage of justice" (*Commonwealth* v. *Freeman,* 352 Mass. 556, 564 [1967]) will result from their following the usual rule of refusing to pass on exceptions not taken (*Commonwealth* v. *Foley,* 358 Mass. 223, 236 [1970]; *Commonwealth* v. *Underwood,* 358 Mass. 506, 507-512 [1970]).

It follows that the defendant does not prevail on the

---

[9] It is not clear whether the defendant's counsel or the defendant participated in the bench conference, but there does not appear to have been any objection to the procedure. See *Commonwealth* v. *Robichaud,* 358 Mass. 300, 303 (1970); *Commonwealth* v. *Kelly,* 1 Mass. App. Ct. 441, 445 (1973).

assignments of error which purport to be addressed to the newspaper article.

*Judgments affirmed.*

ADDENDUM BY GOODMAN, J. (dissenting in part). It is hard to conceive of anything more prejudicial to a fair trial on these charges than the disclosure that the defendant had likewise escaped from a Florida jail.[1] See *Commonwealth* v. *Kosior,* 280 Mass. 418, 423 (1932); *Commonwealth* v. *Stone,* 321 Mass. 471, 473-474 (1947); *Commonwealth* v. *Ellis,* 321 Mass. 669, 670 (1947); *Commonwealth* v. *Welcome,* 348 Mass. 68, 70-71 (1964); *Commonwealth* v. *Nassar,* 351 Mass. 37, 45 (1966); *Commonwealth* v. *DiMarzo,* 364 Mass. 669, 680-681 (1974) (concurring opinion); *Commonwealth* v. *Barrett,* 1 Mass. App. Ct. 332, 337 (1973); *Commonwealth* v. *Fillippini,* 2 Mass. App. Ct. 179, 187 (1974). Contrast *Commonwealth* v. *Eagan,* 357 Mass. 585, 588-589 (1970) (in which the publication concerned a dissimilar crime). This disclosure and the further information that the defendant had been held for four bank holdups, lent obvious credence to the charges of aiding and assisting the others in the escape, in which, the Commonwealth contended, he was the leader.

Of course, the judgment of the trial judge in appraising the effect of the article is entitled to weight, and much must be left to his discretion in deciding the type of instruction which might, in the circumstances, blot out the effect of the article. However, the scope of the trial judge's discretion is not unlimited. *Commonwealth* v. *Theberge,* 330 Mass. 520, 528-530 (1953). *Commonwealth* v. *Crehan,* 345

---

[1] I would reach the merits. It seems to me that a fair reading of the transcript indicates that the motion for a mistrial, which the defendant had filed, triggered the entire proceedings with reference to the three jurors. The trial judge obviously questioned the second juror and considered the response of the third juror in connection with that motion. A further oral motion was not necessary. Indeed, from the briefs it appears that this was the understanding of the parties and the case was argued on this footing.

Mass. 609, 613, 615 (1963). *Commonwealth* v. *Stanley,*
363 Mass. 102, 111 (1973) (dissenting opinion), and mate-
rial cited. See *Commonwealth* v. *Welcome,* 348 Mass. at 70;
*Commonwealth* v. *Fillippini,* 2 Mass. App. Ct. at 187. This
court must ultimately make "[its] own independent eval-
uation" of the risk that there has not been a fair and im-
partial trial. *Commonwealth* v. *Bartoloni,* 2 Mass. App. Ct.
152, 158 (1974). See *Commonwealth* v. *Stanley, supra;*
Strong, The Persistent Doctrine of "Constitutional Fact,"
46 N. C. L. Rev. 223, 244-267 (1968). And each case must
turn on its special facts. *United States* v. *Marshall,* 360
U. S. 310, 312 (1959), quoted in *Commonwealth* v. *Crehan,*
345 Mass. at 614, and *Worcester Telegram & Gazette, Inc.*
v. *Commonwealth,* 354 Mass. 578, 580-581 (1968).

In the circumstances, I do not believe it can be said with
assurance that the article did not infect the trial. See *Com-
monwealth* v. *Stone,* 321 Mass. at 474; *Commonwealth* v.
*Welcome,* 348 Mass. at 70; *Commonwealth* v. *Nassar,* 351
Mass. at 45. The potential for prejudice was overwhelming.
Assuming even that instructions could have exorcised it, it
cannot be said that the rather general observations to the
jury advising them not to read the article were adequate
to the task.[2] *Commonwealth* v. *Banuchi,* 335 Mass. 649,
654 (1957). *Commonwealth* v. *Crehan,* 345 Mass. at 614.
See *Commonwealth* v. *Stanley, supra; Commonwealth* v.
*DiMarzo,* 364 Mass. at 681-682. See also *Commonwealth*
v. *Welcome,* 348 Mass. at 70 (tried to a judge without
jury).

Apart from the unrecorded bench conference with one of
the jurors who was thereafter declared impartial, the per-
functory question to the second juror left her the judge
of her own bias (*Commonwealth* v. *Stanley, supra,* at 111),
and there was no attempt to elicit just what she or the
third juror, who was aware of the article, knew about it.

---

[2] There is apparently nothing in the charge to the jury which either
side thought might bear on this issue since it was not made a part of
the transcript, although the Superior Court Regulations for Stenogra-
phers require that it be recorded. See *Commonwealth* v. *Desatnick,* 262
Mass. 408, 415 (1928).

Indeed, the third juror was not questioned at all. Also to be weighed among the relevant circumstances is the fact that a mistrial at the beginning of the second day, as requested, might well have entailed only the empanelment of a new jury (or at most the postponement of the trial) and the repetition of the prosecuting attorney's rather short and uncomplicated opening — a small price to pay in the "face of great odds created by the publication" against the possibility of a fair trial. *Worcester Telegram & Gazette, Inc.* v. *Commonwealth,* 354 Mass. at 580. Moreover, the meager evidence introduced subsequently (see *Commonwealth* v. *Blackburn,* 354 Mass. 200, 204 [1968]) to support the charges of aiding and assisting reinforces the likelihood of prejudice.

Accordingly, I would order a new trial on those indictments. However, the evidence that the defendant himself escaped is overwhelming; indeed, the defendant as much as admitted it on the stand. Therefore, no new trial is required on that indictment. *Harrington* v. *California,* 395 U. S. 250, 254 (1969).